The majority in the present case has erred in ordering defendant North Carolina Insurance Guaranty Association (NCIGA) to continue paying disability compensation to plaintiff when the evidence of records shows that plaintiff's claim does not qualify as a "covered claim" that falls within the scope of NCIGA's statutory obligations under the North Carolina Insurance Guaranty Association Act, N.C. Gen. Stat. § 58-48-1, et seq. The NCIGA is not the legal successor to the insolvent insurer, and the NCIGA's statutory rights and obligations under the Guaranty Act are not co-extensive with the contractual obligations agreed to by the insurer prior to its insolvency. Nor is the NCIGA the guarantor of any and all claims that exist against the insolvent insurer. Rather, the NCIGA is only obligated for claims under policies of workers' compensation insurance to the extent of "covered claims" that fall within the scope of the NCIGA's statutory obligations under the Guaranty Act. In light of the stipulated factual circumstances surrounding an Assumption Reinsurance Agreement between Reliance National Insurance Company and the North Carolina Selective Fund, plaintiff's claim simply does not qualify for the limited statutory benefits made available by the Guaranty Act.
As referenced in the majority's Opinion and Award, the parties stipulated to the following, in pertinent part:
 On March 3, 1998, BCJ, [plaintiff's employer], was a member of the North Carolina Selective Fund . . . BCJ is an ongoing business concern and is not insolvent. Stipulation 2.
 The Selective Fund is a non-profit corporation which, prior to December 31, 1998, operated as a self-insured employer group within the meaning of Part 1 of Article 47 of Chapter 58 of the N.C. General Statutes. The members of the Selective Fund were various North Carolina employers who agreed to pool their workers' compensation liabilities and were licensed under Part 1 of Article 47 of Chapter 58 of the N.C. General Statutes. Stipulation 3.
 On April 29, 1997, the Selective Fund was placed in administrative supervision by the N.C. Department of Insurance (NCDOI) . . . due to the `hazardous financial condition' of the Selective Fund. Stipulation 11.
 The NCDOI ultimately determined that it was in the best interest of the public and the Selective Fund policyholders to allow the Selective Fund to transfer its policies and liabilities to another insurer. . . . Stipulation 13.
 With the approval of the NCDOI, the Selective Fund entered into a Loss Portfolio Transfer Assumption Reinsurance Agreement with Reliance National Insurance Company. Stipulation 14.
 On October 3, 2001, the Commonwealth of Pennsylvania issued a final Order of Liquidation with a finding of insolvency as to Reliance, and appointed the Insurance Commissioner for the Commonwealth of Pennsylvania as liquidator. Stipulation 26.
 Following the entry of the Final Order of Liquidation against Reliance, the NCIGA activated to fulfill its statutory obligations pursuant to the Guaranty Act. Stipulation 27.
 The Selective Fund is not now and never has been declared insolvent. The Selective Fund never defaulted on the self-insured workers' compensation obligations of its member-employers while it was a licensed self-insurer. The Commissioner of Insurance never notified the N.C. Self Insurance Guaranty Association pursuant to N.C. Gen. Stat. § 97-136 that the Selective Fund is insolvent pursuant to N.C. Gen. Stat. § 97-135. Stipulation 34.
Based upon the above stipulations, the undersigned finds that the next party in line to provide plaintiff compensation would likely be the Selective Fund, or in the alternative, its guarantor, the N.C. Self Insurance Guaranty. N.C. Gen. Stat. §§ 97-2(7); 97-93. Moreover, the undersigned questions and does not accept the veracity of Stipulation 34 of the above-referenced Opinion and Award, regarding the solvency of the Selective Fund. If NCDOI had not stepped in and determined that the Selective Fund should transfer its policies and liabilities to Reliance, then the Selective Fund would have indeed become insolvent. And if the Commission were to find that the former Reliance claims that are not "covered claims" under the N.C. Insurance Guaranty Association Act should be related back to the Selective Fund, then the Selective Fund would likely become insolvent. Under such scenario, the North Carolina Self Insurance Guaranty Association would likely be liable for such claims. With respect to the stipulation that the Selective Fund was not insolvent, I find it strange that the trier of fact must accept a stipulation that flies in the fact of proof to the contrary. If the trier of fact is to be the trier of fact it should be in a position to reject stipulations of the parties that are plainly wrong.
It is undisputed that the effect of the Assumption Reinsurance Agreement was not the issuance of a new policy of workers' compensation liability insurance, but instead Reliance's assumption of the Selective Fund's self-insured obligations under the Selective Fund's existing policies, with those self-insured policies continuing in effect for purposes of establishing Reliance's future contractual obligations. No transformation of the Selective Fund obligations from self-insured obligations to insurance obligations under a policy properly issued by an insurer took place as a result of the Assumption Reinsurance Agreement. Instead, Reliance obligated itself contractually to assume the Selective Fund's self-insured obligations into the future. Because the Selective Fund's policies continued in effect, and because the nature and quality of the obligations remained as self-insured obligations both before and after the Assumption Reinsurance Agreement, the claim in this case could not, as a matter of law, be transformed from a self-insured claimoutside of the scope of the Guaranty Act, into a claim arising under a workers' compensation insurance policy that is within the scope of the Guaranty Act. Simply put, a self-insured claim will always remain a self-insured claim. The fact that Reliance bound itself contractually as a self-insurer in substitution for the Selective Fund does not make the NCIGA statutorily obligated under the Guaranty Act for those self-insured claims upon the subsequent occurrence of Reliance's insolvency.
I also find it exceedingly strange that the Commissioner of Insurance has converted what would have been a liability of the self insured guaranty fund to a liability of the insured guaranty fund. It seems to me that if each separate segment of the "insurance" field is to bear its own burdens and not those of the other segment, that a self insured liability should forever remain a self insured liability. Why burden the insurance industry with a self insured liability?
The majority in the present case has erred in ordering defendant NCIGA to continue paying disability compensation to plaintiff when the evidence of records shows that plaintiff's claim does not qualify as a "covered claim" that falls within the scope of NCIGA's statutory obligations under the Guaranty Act. The proper and next party in line to provide plaintiff compensation would likely be the Selective Fund, or in the alternative, its guarantor, the N.C. Self Insurance Guaranty. For the reasons given herein, I respectfully dissent.
This 6th day of April 2004.
 S/__________ THOMAS BOLCH COMMISSIONER